IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT JOHN GIBSON, ) | |
| ) | Civil Action No. 05 - 874 |
| Petitioner, ) | |
| v. ) | Chief Judge Donetta W. Ambrose |
| ) | Magistrate Judge Lisa Pupo Lenihan |
| UNITED STATES of AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

### II.  REPORT

Robert John Gibson, a federal prisoner currently incarcerated at the Federal Correctional Institution at Schuylkill in Minersville, Pennsylvania, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 claiming that the Pennsylvania Board of Probation and Parole (the Board) refused to follow this Court's directive that his federal sentence run concurrent to his undischarged state parole violation sentence.  For the reasons that follow, Petitioner has failed to state a constitutional claim upon which this court can grant habeas corpus relief under 28 U.S.C. § 2254.

A. Relevant Procedural History

On September 28, 2000, Gibson was released on parole from state custody in the Commonwealth of Pennsylvania in regard to his numerous criminal convictions during 1990 and 1991 in the Court of Common Pleas of Allegheny County, Pennsylvania at CC 910002078,

01819; CC 910000809; CC 910000454; CP 90002476, 00506; CP 900002477; CP 900002478, 2479; and CP 900002480, 00002.[1]  In the Spring of 2002, Gibson went on a robbery spree.  On May 31, 2002, he robbed the National City Bank in Columbiana, Ohio.  On June 14, 2002, he robbed the Freedom United Federal Credit Union in Rochester, Pennsylvania and on June 27, 2002 he robbed the Allegheny Valley Bank in Pittsburgh, Pennsylvania.  Later that day, he was arrested and taken into custody and confined in the Allegheny County Jail.

Shortly following his arrest, a federal criminal complaint was filed in this court relative to the two Pennsylvania bank robberies.  At the time of the bank robberies, Gibson was on parole with respect to his Pennsylvania state sentences identified above.  It is unclear from the record whether he was in State or Federal custody from June 27, 2002 onward.  In his 2254 Petition, Petitioner's counsel states that on July 3, 2002, Gibson was taken into federal custody via a *writ of habeas corpus ad prosequendum*.[2]  On July 9, 2002, Gibson was indicted for bank robbery in violation of 18 U.S.C. § 2113(a) in the Northern District of Ohio.  On July 23, 2002, he was indicted for two counts of bank robbery in violation of 18 U.S.C. § 2113(a) in the Western District of Pennsylvania. (Crim. No. 02-146, dkt. no. 1).  Eventually, the indictment from the Northern District of Ohio was transferred to the Western District of Pennsylvania.

On July 21, 2003, Gibson pleaded guilty to counts One and Two before this Court. (Crim. No. 02-146, dkt. no. 24).  Shortly thereafter, Gibson contacted the Pennsylvania Board of Probation and Parole (the Board) by letter advising it that he was available for action on the

---

[1]  See Attachments to dkt no. 6.

[2]  If in fact the federal authorities needed a writ of *habeas corpus ad prosequendum*, it would seem that Gibson was in state custody at the time.  In a letter to the Board dated April 7, 2004, Gibson's attorney sets forth that the Board lodged a state parole detainer against Gibson on July 3, 2002.  See Ex. 4, dkt. no. 4, Petition.

Board's pending warrant against him to recommit him as a convicted parole violator (CVP). On July 30, 2003, Petitioner waived his right to a final parole revocation hearing before a panel and requested his hearing be held before an examiner. On August 7, 2003, Petitioner waived his right to counsel with regards to his parole revocation hearing. On September 29, 2003, the Board ordered Gibson recommitted to state custody as a convicted parole violator to serve forty-eight months backtime, when available, on the Pennsylvania sentences for which he was paroled in September of 2000.

Based on the parole revocation sentence, Gibson filed a "Supplement" with the Court in his federal criminal action asking the Court to do two things: 1) make his federal sentence "concurrent" with his 48-month state sentence; and 2) "adjust" his federal sentence to reflect the 15.5 months that he had already served since the date of his arrest on the instant bank robbery offenses. (Crim. No. 02-146, dkt. no. 30). On October 17, 2003, this Court sentenced Gibson to an aggregate term of imprisonment of 151 months effective October 17, 2003 "which will be concurrent from this date to the State sentence the defendant is serving." (Crim. No. 02-146, dkt. nos. 32, 33). However, the Court did not give Gibson credit for the 15.5 months that he was in custody from June 27, 2002 through October 17, 2003. Following his sentencing, Petitioner was returned to the ACJ where he remained for almost a year until September 9, 2004 when he was committed into federal custody.

When the federal court sentenced Gibson, it believed that he was serving his forty-eight (48) month probation sentence and that he would continue to serve that sentence until its completion when he would be taken into federal custody to serve the remainder of his federal sentence. Unfortunately for Gibson, the Board refused to implement this Court's directive for

concurrent sentencing.  *See* letters form Gibson's counsel to the Board attached as Exhibits 4-8 to Petition, dkt. 4.).  On April 22, 2004, the Board removed its detainer against Gibson.  (Ex. 8 to Petition, dkt 4).  On September 9, 2004 Gibson was committed to federal custody.  (BOP Sentence Calculation Sheet, attachment to Ex. 10, dkt. 4).  On that same date, the Board issued a Warrant to arrest and detain Gibson in accordance with its recommitment order to serve backtime on his Pennsylvania sentences.  Subsequently, on September 21, 2004, the Bureau of Prisons (BOP) granted Gibson credit on his federal sentence for all of the time he served at the ACJ from June 27, 2002 through the effective date of his federal sentence, October 17, 2003.

### B. Claims Cognizable in Federal Habeas Corpus Proceedings

Petitioner challenges the Board's refusal to follow the federal court's sentencing directive that his federal sentence run concurrent to his state sentence.   Petitioner is not entitled to habeas corpus relief with respect to this claim as he has failed to allege the denial of any federal constitutional right.

In this regard, 28 U.S.C. § 2254 specifically provides that a state prisoner may seek federal habeas corpus relief only if he is in custody in violation of the Constitution or federal law.

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).  Claims based on errors of state law are not cognizable on federal habeas review.  Pulley v. Harris, 465 U.S. 37, 41 (1984); Smith v. Phillips, 455 U.S. 209, 211 (1982), and a federal habeas court cannot re-examine state court determinations on state law issues.

Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Mullaney v. Wilbur, 421 U.S. 684, 691 (1975). Thus, a writ of habeas corpus is not available when a state prisoner merely alleges that something in the state proceedings was contrary to general notions of fairness or violated some federal procedural right unless the Constitution or other federal law specifically protects against the alleged unfairness or guarantees the procedural right in the state courts. Stated differently, if the state violated its own laws, a petitioner must show that the alleged violation of state law denied him due process under the Fifth and Fourteenth Amendments. *See* Hicks v. Oklahoma, 447 U.S. 343, 346 (1980). Moreover, the deprivation occasioned by the state's failure to follow its own law must be arbitrary in the constitutional sense; that is, it must shock the judicial conscience. *See, e.g.*, Collins v. City of Harker Heights, Texas, 503 U.S. 115, 129-30 (1992).

## C. Petitioner's Sentencing Claim

Petitioner's claim that the Board refused to allow him to serve his backtime sentence concurrently with his federal sentence alleges violations of state law and, therefore, is not cognizable on federal habeas review. *See* United States ex rel. Long v. Rundle, 327 F.2d 495, *cert. denied*, 377 U.S. 957 (1964) (holding that petitioner's claim that he should have been permitted to serve the remainder of the sentence from which he was paroled before serving the sentence imposed for the crime committed while on parole raised no constitutional question). In this regard, there is no inherent constitutional right to concurrent sentences, nor is there a constitutional right regarding which sentence should be served first. *See* United States v. Dovalina, 711 F.2d 737, 739 & n. 1 (5th Cir.1983) (holding that the Constitution does not create a right to have state and federal sentences run concurrently). *Cf.* Piercy v. Black, 801 F.2d 1075, 1078-79 (8th Cir. 1986) (rejecting full faith and credit clause argument because "one state cannot

control the manner in which another state administers its criminal justice system."). When two separate sovereigns or jurisdictions issue sentences for the same defendant, the order in which the sentences are to be served is a matter of comity between the jurisdictions.

> It is well recognized rule of law that a person who has violated the criminal statutes of both the Federal and State Government may not complain of the order in which he is tried or punished for such offenses. Each is a sentence unto itself, otherwise there would be no orderly procedure in handling cases of this kind between two sovereigns.

Gunton v. Squier, 185 F.2d 470, 471 (9th Cir. 1951).

This Court is aware that the federal statute 18 U.S.C § 3584(a) allows a federal court discretion to impose its federal sentence to run concurrently or consecutively to an undischarged term of imprisonment. Notwithstanding, Pennsylvania law governs the execution of Petitioner's undischarged backtime sentence. Specifically, the Pennsylvania Parole Act, 61 P.S. § 331.21a(a) mandates that where a parolee is convicted and sentenced to imprisonment for a crime committed while on parole, and is recommitted by the Board as a parole violator, the remainder of his original sentence and the subsequent new sentence must be served consecutively and the sentencing judge has no authority to order that the sentences be concurrent. *See* Young v. Pennsylvania Board of Probation and Parole, 29 Pa.Commw. 268, 271, 370 A.2d 813, 815 (1977). Section 21.1(a) of the Parole Act provides that backtime is to be served prior to the service of a new sentence in a state correctional institution, but is to follow the service of a new sentence outside of the jurisdiction of the Pennsylvania Department of Corrections. Vance v. Pa. Bd. Of Probation and Parole, 741 A.2d 838, 840 n.2 (Pa. Commw. 1999). Indeed, the Commonwealth Court of Pennsylvania specifically has held that it was not improper for the Board to require a petitioner to serve his back-time as a convicted parole violator consecutive to

his federal sentence even though sentencing judge on his federal conviction had ordered that his federal sentence run concurrently with any state back-time.  *See* Harris v. Commonwealth, Bd. of Probation and Parole, 38 Pa. Commw. 391, 397, 393 A.2d 510, 513 (1978).

> While the federal court had the authority to order Petitioner's federal sentence to run concurrently with his state sentence, that court order cannot require Pennsylvania authorities to run his Pennsylvania sentence concurrently with his federal sentences.  *See, e.g.*, Taylor v. Sawyer, 284 F.3d 1143, 1151 (9th Cir. 2002) (holding that when a criminal defendant owes a debt to two separate sovereigns, each may exact payment independently of the other); Jake v. Herschberger, 173 F.3d 1059, 1065 (7th Cir.1999) ("[A] determination as to concurrence of sentence made by one sovereign does not bind the other."); United States v. Ballard, 6 F.3d 1502, 1509 (11th Cir. 1993)  ("The tenet for dual sovereignty purposes is that each sovereign must respect not only the sentencing authority of the other, but also the sentence."); Meagher v. Clark, 943 F.2d 1277, 1281-82 (11th Cir. 1991) (holding that a federal sentencing court has no obligation to implement or otherwise to respect a state court's order that state and federal sentences run concurrently).; United States v. Sackinger, 704 F.2d 29, 32 (2nd Cir. 1983) ("[U]nder the dual sovereignty principle Sackinger could not, by agreement with state authorities, compel the federal government to grant a concurrent sentence."); Del Guzzi v. United States, 980 F.2d 1269, 1272 (9th Cir.1992) (Norris, J. concurring) (noting that a state judge's imposition of a concurrent sentence is nothing more than a recommendation to federal officials that federal officials are free to disregard).  *See also* People v. Alba, 189 Misc.2d 258, 267 (N.Y. Supp. 2001) (holding that the New York State Department of Correctional Services may disregard an order of a federal sentencing court directing that a defendant's federal sentence

run concurrently with his prior state sentence noting that each jurisdiction is free to enforce its criminal laws without regard to the other's order or decision); <u>Oses v. United States</u>, 833 F. Supp. 49, 54 (D. Mass. 1993) ("It is elementary that the United States and the several states constitute separate sovereignties, and that each sovereign is free to exercise its own prerogatives, within the limits set by the federal Constitution, to convict and punish criminals in accordance with its own sense of discretion, justice, and utility.")

Simply stated, the Board's actions do not violate any of Gibson's constitutional rights. Petitioner's assertion to the contrary is simply wrong. First, the Full Faith and Credit Clause, by its very language, does not apply to the federal government. Moreover, the Supreme Court of the United States has held that criminal judgments are not entitled to full faith and credit because no State is bound to enforce the penal laws of another State or to punish a person for a wrong committed against it. *See* <u>Nelson v. George</u>, 399 U.S. 224, 229 (1970).

Second, Petitioner's due process rights have not been violated by the Board's actions. In this regard, "due process" is guaranteed through the Fifth and Fourteenth Amendments of the United States Constitution. The pertinent language of the Fourteenth Amendment provides as follows.

> Section 1.   All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; <u>nor shall any State deprive any person of life, liberty, or property, without due process of law</u>; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amend. XIV, § 1 (emphasis added).

The Due Process Clause was promulgated to secure the individual from the arbitrary

exercise of the powers of government.  The "procedural" aspect of the Due Process Clause requires the government to follow appropriate procedures to promote fairness in governmental decisions; the substantive aspect of the Clause bars certain government actions regardless of the fairness of the procedures used to implement them so as to prevent governmental power from being used for purposes of oppression.  Daniels v. Williams, 474 U.S. 327, 329-33 (1986). (citations omitted.)

To establish a procedural due process violation, a person must demonstrate that he has been deprived of a constitutionally-protected property or liberty interest.  Daniels v. Williams, 474 U.S. at 339.  A constitutionally-protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation.  Hewitt v. Helms, 459 U.S. 460, 466 (1983). A liberty interest "inherent" in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process.  Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973).  Liberty interests that fall within this category include the revocation of parole, Morrissey v. Brewer, 408 U.S. 471 (1972), and the revocation of probation, Gagnon, 411 U.S. at 778.  The Due Process Clause, however, does not create an inherent right for a convicted person to receive credit on his sentence for time spent on release from custody on parole.  *See* Choice v. Pennsylvania Bd. of Parole, 448 F.Supp. 294, 298 (M.D. Pa. 1977) and cases cited therein.  Nor does the Due Process Clause grant an inherent right to receive a concurrent sentence from two separate sovereigns.  Thus, Petitioner's claim does not state a violation of his procedural due process rights unless Pennsylvania law or regulation has created a protected liberty interest.

A state law or regulation can create a liberty interest protected by the Due Process Clause

through the use of explicitly mandatory language in connection with specific substantive predicates that limit official discretion to create a legitimate expectation that a particular outcome will be reached upon a finding of the relevant criteria.  *See, e.g.*, Hewitt v. Helms, 459 U.S. 460, 472 (1983); Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (holding that the word "shall" in state parole statute created a legitimate expectation of release absent the requisite finding that one of the justifications for deferral existed).[3]  As stated above, however, relevant Pennsylvania law does not create any legitimate expectation that a Pennsylvania inmate could serve his parole backtime concurrent to a new conviction he received while he was on parole.

First of all, section 331.21a of the Pennsylvania Parole Act, like statutes enacted in many other states and by the federal government, does not give any sentencing credit for time spent on parole for the remainder of a parolee's sentence who has been convicted of other crimes while on parole.  Thus, it is clear that Pennsylvania law does not create any liberty interest in Petitioner receiving credit on his Pennsylvania sentence for the time that he was released from Pennsylvania custody on parole.[4]

Second, section 331.21.1(a) of the Parole Act specifically provides that backtime is to be

---

[3] *See also* Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 462 (1989) (" 'a State creates a protected liberty interest by placing substantive limitations on official discretion' ") (quoting Olim v. Wakinekona, 461 U.S. 238, 249 (1983)).

[4] *Accord* Choice v. Pennsylvania Board of Probation and Parole, 448 F. Supp. 294 (M.D. Pa. 1977) (no constitutional violation where Board extended prisoner's maximum sentence due to his subsequent convictions); United States ex rel. Harbaugh v. Commonwealth of Pennsylvania, 267 F.Supp. 948 (W.D. Pa. 1967) (petitioner was not entitled to federal habeas corpus on basis that his maximum term of imprisonment had been extended because of his conviction of new crime in another state while on parole from his Pennsylvania conviction).

served prior to the service of a new sentence in a state correctional institution, but is to follow the service of a new sentence outside of the jurisdiction of the Pennsylvania Department of Corrections.  *See* Vance v. Pa. Bd. Of Probation and Parole, 741 A.2d 838, 840 n.2 (Pa. Commw. 1999); Harris v. Commonweath, Bd. of Probation and Parole, 38 Pa. Commw. 391, 397, 393 A.2d 510, 513 (1978).  Accordingly, Petitioner has failed to demonstrate that he suffered any violation of his procedural due process rights.

As stated above, the substantive aspect of the Due Process Clause of the Fourteenth Amendment protects individuals against arbitrary governmental action, regardless of the fairness of the procedures used to implement them.[5]  Several courts, including the Court of Appeals for the Third Circuit, recognize that an inmate's substantive due process rights may be violated by arbitrary government action.[6]

The Supreme Court has declined to set forth a precise rule that defines of scope of impermissible "arbitrary" conduct for purposes of applying the substantive component of the Due Process Clause.  Nonetheless, the Court has clarified that governmental conduct does not violate a person's substantive due process rights unless it amounts to an abuse of official power that "shocks the conscience."  County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).  Liberally construed and taken as true, Petitioner does not state a violation of his substantive due process rights with respect to the Board's action in following its statutory directive to deny

---

[5]  *See, e.g.* Collins v. Harker Heights, 503 U.S. 115, 126 (1992) (noting that the Due Process Clause was intended to prevent government officials from abusing power, or employing it as an instrument of oppression).

[6]  *See, e.g.*, Monroe v. Thigpen, 932 F.2d 1437, 1442 (11th Cir. 1991); Newell v. Brown, 981 F.2d 880, 886 (6th Cir. 1992), *cert. denied*, 510 U.S. 842 (1993); Block v. Potter, 631 F.2d 233, 236 (3d Cir. 1980); Carter v. Kane, 938 F. Supp. 282 (E.D. Pa. 1996).

Petitioner the opportunity to serve his Pennsylvania backtime sentence concurrent to his federal sentence.  Is simply does not shock the judicial conscience to require Petitioner to serve his federal and state sentences consecutively as the sentences were imposed for two distinct separate criminal episodes that occurred almost a decade apart.  As such, Petitioner has failed to allege that he has suffered a violation of his constitutional rights as protected by the substantive prong of the Due Process Clause.  *Accord* Aycox v. Lytle, 196 F.3d 1174, 1179 -1180 (10th Cir. 1999) (state's decision to deny petitioner credit for time spent in custody in another state did not result in any fundamental unfairness or otherwise deny him due process of law).

As a final matter, this court notes that Petitioner cannot state a claim for relief under the Eighth Amendment's prohibition against cruel and unusual punishment based on the Board's actions in refusing to take custody over him until he serves his federal sentence.  The Eighth Amendment prohibits punishments that involve the unnecessary and wanton infliction of pain or that are grossly disproportionate to the severity of the crime.  Rhodes v. Chapman, 452 U.S. 337, 345-46 (1981).  Statutorily prescribed prison sentences resulting in confinement in penal institutions do not constitute cruel and unusual punishments.  Peterkin v. Jeffes, 855 F.2d 1021, 1027 (3d Cir. 1988).  It is only when a prisoner is incarcerated past the expiration of his maximum sentence that a claim may arise for deprivation of his Eighth Amendment rights.  *See* Sample v. Diecks, 885 F.2d 1099 (3d Cir. 1989).

The Pennsylvania Parole Act, like statutes enacted in many other states and by the federal government, does not give any sentencing credit for time spent on parole for the remainder of a parolee's sentence who has been convicted of other crimes while on parole.  Thus, for parolees like Gibson, who chose to commit additional criminal offenses during the period they would

have been incarcerated but for the fact that they were released on parole, the service of their sentence "freezes" on the date of their release on parole and does not begin running again until they are returned to custody in Pennsylvania to serve the remainder of the original sentence.[7] In the case at bar, the Board lawfully imposed a backtime sentence upon Gibson as a convicted parole violator, which, by law, he cannot serve until the expiration of his federal sentence. Accordingly, he cannot state a claim for relief under the Eighth Amendment. Townsend v. Burke, 334 U.S. 736, 741 (1948) (recognizing that a challenge to the term of a sentence does not present a cognizable constitutional issue in habeas proceeding if the sentence falls within the statutory range).

The preceding discussion reveals that the Board did not violate any of Petitioner's constitutional rights. Thus, Petitioner has not demonstrated that he is entitled to relief from this federal court under 28 U.S.C. § 2254.[8]

### D. Certificate of Appealability

The Antiterrorism and Effective Death Penalty Act of 1996 included several major reforms to the federal habeas corpus laws. Section 102 of the Act (28 U.S.C. § 2253(c) (as amended)) codifies standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended section 2253 provides that

---

[7] Under Pennsylvania law, this time is referred to as "backtime," which is defined as "[t]he unserved part of a prison sentence which a convict would have been compelled to serve if the convict had not been paroled." 37 Pa. Code § 61.1.

[8] This is not to say that Petitioner does not have a valid state law claim under the precepts set forth in Walker v. Pennsylvania Board of Probation and Parole, 729 A.2d 635 (Pa. Commw. 1999), which he may pursue via an action for mandamus in the Commonwealth Court. Because this is a state law claim, it does not raise a constitutional issue for this Court to decide.

"[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  In the case at bar, Petitioner has not made any showing that he has been denied any of his constitutional rights.  Accordingly, a certificate of appealability should be denied.

### III.   CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

    /s/Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge

Dated: July 25, 2006

cc:   The Honorable Donetta W. Ambrose
      United States District Judge

      Frank Arcuri
      90 West Chestnut Street

715 Millcraft Center
Washington, PA 15301

Robert John Gibson
07465-068
FCI at Schuylkill
P.O. Box 759
Minersville, PA 17954

Christian D. Bareford
OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219